# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3397 | **DATE** | 8/19/2002 |
| **CASE TITLE** | Sungard Data Systems, Inc. vs. Central Parking Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order granting defendant's motion to dismiss. Accordingly, this action is dismissed for lack of jurisdiction. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 20 2002 | |
| | Notified counsel by telephone. | | date docketed | 8 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 8/19/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNGARD DATA SYSTEMS, INC. | ) |
| Plaintiff, | ) |
| v. | ) No. 02 C 3397 |
| CENTRAL PARKING CORPORATION, | ) |
| Defendant. | ) |

**DOCKETED AUG 2 0 2002**

## MEMORANDUM OPINION AND ORDER

Sungard Data Systems, Inc. ("Sungard"), a Pennsylvania corporation, sues Central Parking Corporation ("Central Parking"), a Tennessee corporation, for breach of contract under Illinois law. Central Parking moves to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). I grant the motion.

I.

Central Parking is a Tennessee corporation with offices located exclusively in Tennessee. In July 1999, Central Parking entered into a Master Agreement ("Agreement"), a Business Continuity Supplement ("Supplement"), and executed a Schedule for providing business continuity services ("Schedule") with Comdisco, Inc. ("Comdisco"), a Delaware corporation with offices located in Illinois. In December 1999, Central Parking executed an Amendment to the Schedule ("Amendment") for the upgrade of the business continuity services and an increase in fees.

Sungard, a Pennsylvania corporation with its principal place of business in Pennsylvania, provides business continuity and disaster services and has offices located in Rosemont, Illinois. Sungard is the successor in interest to the contracts between Central Parking and Comdisco, and it alleges that Central Parking has breached its contractual agreements with Comdisco by failing to make payments under the contracts.

## II.

I have personal jurisdiction over a defendant "only if a court of the state in which [I] sit[] would have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). On a motion to dismiss for lack of personal jurisdiction, I "accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." *Diamond Mort. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1245 (7th Cir. 1990). I may consider affidavits and other documents outside the pleadings. *Turnock v. Cope*, 816 F.2d 322, 333 (7th Cir. 1987). Here, Central Parking submits an affidavit from Henry Abbott. Sungard submits affidavits from John Jackson and Sheila Dolan.

Sungard has the burden of showing that jurisdiction is proper under (1) the Illinois long-arm statute, 735 ILCS 5/2-209, (2) Illinois constitutional law, and (3) federal constitutional law. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Illinois long-arm statute authorizes personal

jurisdiction to the limits of the Illinois and federal constitutions, § 2-209(c), so the inquiry collapses into two constitutional inquiries—state and federal. *Id.*

III.

Where a case can be disposed of on state law grounds, I attempt to avoid reaching federal constitutional questions and address Illinois constitutional issues first. *RAR, Inc.*, 107 F.3d at 1276. The Illinois Supreme Court has held that Illinois due process is not necessarily co-extensive with federal due process, though federal law may inform the state inquiry. *Id.* Illinois courts have given little guidance on how Illinois due process varies from federal concerns. *Id.* at 1276-77. Here, the parties have not indicated, nor has research uncovered, any case law that suggests that my analysis would differ under the Illinois and federal constitutions, so I proceed to the federal analysis.

Sungard argues that I have specific jurisdiction over Central Parking. In specific jurisdiction cases, I must determine whether a defendant has "purposefully established minimum contacts within the forum State and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances." *RAR, Inc.*, 107 F.3d at 1276. The question is whether the defendant "should reasonably anticipate being haled into court" in the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). A defendant has "fair warning" that it may be

called to defend a suit in the forum state if it "purposefully avails itself of the privilege of conducting activities within the forum State thereby invoking the benefits and protections of the forum's laws." *Klump*, 71 F.3d 1372. The plaintiff's cause of action must arise out of or be related to these minimum contacts and comport with traditional notions of fairness and justice. *See Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Central Parking argues that I cannot exercise personal jurisdiction over it because it never transacted any business in Illinois. It states that it has never had an office, facility, agent, or employee in Illinois, nor has it ever owned property or advertised here. Abbott Aff. ¶¶ 3-10. Sungard argues that I have personal jurisdiction despite Central Parking's lack of physical presence in Illinois. First, it claims that Central Parking executed documents that were sent to Comdisco in Illinois for Comdisco's signature, the last act necessary to form the contract. *See* Jackson Aff. ¶ 4. Second, it claims that payments pursuant to the contract were to be made in Illinois and that its invoices were sent from Illinois. *Id.* ¶ 5. Third, it claims Central Parking agreed to a choice of law provision by which any disputes would be decided according to Illinois law. Agreement § 9.8. Fourth, it claims that contract preparation and processing was provided in Illinois. Jackson Aff. ¶ 5. Fifth, it argues that all of the

-4-

services that Comdisco provided to Central Parking with the exception of disaster recovery testing were provided from Illinois. Jackson Aff. ¶ 5. Finally, Sungard claims that the primary Comdisco recovery facility utilized by Central Parking was located in New Jersey and that it maintained a back-up facility in Illinois. Jackson Aff. ¶ 7.

An out-of-state party's contract with an in-state party "is alone not enough to establish the requisite minimum contacts. Rather, prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *RAR, Inc.*, 107 F.3d at 1277 (internal citations and quotation marks omitted). The fact that the contract was executed in Illinois is not dispositive. *See R.R. Donnelley & Sons Co., v. Hays Int'l Mailing Serv. Inc.*, No. 98 C 8403, 1999 WL 284798, at *4 (N.D. Ill Apr. 26, 1999) (Pallmeyer, J.) (holding that "whether the contract was negotiated, executed, or performed in Illinois are not dispositive factors for determining jurisdiction," and that touchstone of minimum contacts test is foreseeability). Nor are Comdisco's acts of drafting and signing the contract in Illinois relevant; the unilateral acts of the plaintiff in the forum state do not establish the necessary minimum contacts required for specific jurisdiction. *Burger King*, 471 U.S. at 475.

Likewise, simply "making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction." *Federated Rural Elec. Ins. Corp v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994). *See also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777-778 (5th Cir. 1986) (holding that contracts, checks and written communication sent by a foreign defendant to a plaintiff in the forum state were insufficient to establish specific personal jurisdiction over the defendant). The choice of law provision is also only one factor to consider in the minimum contacts analysis, and standing alone, it is insufficient to confer personal jurisdiction. *Cf. Burger King*, 471 U.S. at 482 (holding that choice of law provision, though alone insufficient, was significant contact in light of 20-year interdependent franchise relationship).

Sungard relies on *Continental Bank, N.A. v. Everett*, 964 F.2d 701 (7th Cir. 1992), in which the Seventh Circuit found the requisite minimum contacts for personal jurisdiction where a non-resident defendant guaranteed a loan with an Illinois bank, the loan documents were delivered to and executed in Illinois, the loan was to be repaid in Illinois and the guarantors agreed that Illinois law would govern. *Id.* at 703. Like *Everett*, Central Parking agreed to an Illinois choice-of-law provision, and payments were to be made in Illinois. However, in *Everett*, the loan documents "recite[d] that they were delivered and executed in

Illinois." *Id.* Here, the Agreement does not say where it was executed or delivered. Compl. Ex. 1. The December 1999 Amendment was signed by a representative of Central Parking in Tennessee, and it states that it was returned to a Comdisco representative at Comdisco's Franklin, Tennessee, office. Compl. Ex. 4.

Central Parking states that "[t]he only contact that [Central Parking] had with [Comdisco] was through [Comdisco's] sales representative who was located within Tennessee." Abbott Aff. ¶ 8. Sungard does not directly contradict this statement; it states that "[the] contracts had previously been executed by Central Parking Corporation and returned to Comdisco, Inc. in Illinois." Jackson Aff. ¶ 4. The use of the passive voice here is ambiguous; this might be understood to mean that a Central Parking representative sent the Agreement to Comdisco in Illinois. But the Amendment was returned to a Tennessee representative of Comdisco, and Central Parking states that all of its contact was with a Tennessee representative of Comdisco, so it is also possible that the Agreement was delivered to Comdisco's Tennessee office and then forwarded to Illinois by Comdisco, not by Central Parking. Even resolving this ambiguity in favor of Sungard, however, *Everett* is distinguishable on other grounds.

The court in *Everett* did not say which party initiated the contract or which party solicited business from the other, but solicitation is a highly relevant contact. *See Wilson v. Humphreys*

-7-

*(Cayman) Ltd.*, 916 F.2d 1239, 1244-45 (7th Cir. 1990); *see also RAR, Inc.*, 107 F.3d at 1277 (holding that minimum contacts analysis should consider "parties' actual course of dealing"). Here Sungard admits that all of the sales activities occurred in Tennessee, and Central Parking states that it never advertised in Illinois and that its only contacts with Comdisco were through Comdisco's sales representative based in Tennessee. Nothing in the record suggests that Central Parking reached out into Illinois to solicit business, and the evidence in the record suggests that Comdisco solicited Central Parking in Tennessee.

Moreover, the contract here was not "substantially connected" to Illinois. *Cf. Everett*, 964 F.2d at 703. The contract was for business continuity services, and Central Parking conducts its business exclusively in Tennessee. According to the Schedule, the Primary Recovery Center which provided the necessary equipment was located in New Jersey. Agents from Central Parking went to New Jersey to test that equipment in 2000, Dolan Aff. ¶ 3, but no Central Parking agent ever traveled to Illinois. Sungard relies on the statements in Jackson's affidavit that "[a]ll of the administrative support, including contract preparation, processing and billing for the services to be performed for [Central Parking] were performed at the Comdisco offices in Rosemont, Illinois, with invoices being mailed from Illinois," ¶ 5 and that "[a]ll of the services that were provided to [Central Parking] were provided in

-8-

Comdisco in Illinois with the exception of disaster recovery testing which was provided in New Jersey and sales activities provided in Tennessee," ¶ 6. But these are Comdisco's contacts with Illinois, not Central Parking's. *See Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1360 (7th Cir. 1996) (Specific jurisdiction cannot be based solely on the "unilateral activity of another party or a third person."); *see also Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir. 1989) ("The question is whether [the defendant] was transacting business in Illinois, not whether [the plaintiff], the Illinois resident, was."). The business that Central Parking contracted to protect was not in Illinois, and the administrative services that Comdisco may have provided from Illinois are too insignificant to establish minimum contacts. *See, e.g., Federated Rural Elec. Ins. Corp.*, 18 F.3d at 394 (holding that, notwithstanding administrative services performed by plaintiff in forum, insurance contract lacked "substantial connection" to Illinois under long-arm statute where insured party was located outside forum and essence of contract was protection of property outside the forum). Like an insurance contract, which is centered on the insured property, this contract for business continuity services was centered on Central Parking's business in Tennessee.

Finally, Sungard argues that, because Comdisco maintained a back-up recovery facility in Illinois, which was available to

Central Parking, Comdisco provided services to Central Parking in Illinois. *See* Jackson Aff. at ¶ 7. However, there is no evidence that the Illinois back-up facility was ever used, nor does the contract specifically identify the Illinois facility as a potential service provider; it merely states that in the event of a multiple disaster, Comdisco will provide customer access to any other available Backup Capability among Comdisco's world-wide Recovery Centers. Supplement § 3.2. The fact that Comdisco had an Illinois facility that may have been available to Central Parking does not mean that services were, or that the parties reasonably anticipated that they would be, provided from Illinois. This is a merely fortuitous contact, and accordingly cannot serve as a basis for personal jurisdiction over Central Parking. *See Mid-America Tablewares, Inc.*, 100 F.3d at 1360 ("Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .").

Viewed in their totality, *see id.* at 1361 (holding that "the minimum contacts inquiry is one that examines the totality of the circumstances"), Central Parking's contacts with Illinois in this case are too insignificant or fortuitous to support personal jurisdiction. Because I find that Sungard has not established that Central Parking has the necessary minimum contacts to establish personal jurisdiction, I need not determine whether the assertion of personal jurisdiction would comport with "fair play and

substantial justice." *Burger King*, 471 U.S. at 476. Central Parking's motion to dismiss is GRANTED.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated:     August 19, 2002